Filed 10/27/22  Walmart v. County of Placer CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| WALMART INC., | |
| Plaintiff and Appellant, | C093835 |
| v. | (Super. Ct. No. SCV0044625) |
| COUNTY OF PLACER, | |
| Defendant and Respondent. | |

Walmart disagreed with the county assessor's valuation of two of Walmart's properties for taxation purposes, and filed a claim for refund with the Placer County Assessment Appeals Board (Board).  After the Board sustained the assessor's valuation, Walmart filed a complaint for refund in the trial court.  Following a bench trial, the trial court entered judgment in favor of Placer County (County).

Walmart now contends (1) the trial court should not have denied argument asserting a violation of a particular valuation rule because Walmart's pleading sufficiently raised the issue, and (2) the Board's valuation of the property was incomplete.[1]  Finding no error, we will affirm the judgment.

---

[1] Amicus curiae California Retailers Association filed a brief in support of Walmart in which amicus makes essentially the same arguments as Walmart.

1

BACKGROUND

A

The California Constitution provides that, unless exempt, "[a]ll property is taxable and shall be assessed at . . . fair market value." (Cal. Const., art. XIII, § 1, subd. (a).) The county assessor bears the duty to determine the full value of real property for taxation purposes. (Rev. & Tax. Code, § 401.)[2] "Full value" and synonymous terms such as "fair market value" "mean the price at which the unencumbered or unrestricted fee simple interest in the real property (subject to any legally enforceable governmental restrictions) would transfer for cash or its equivalent . . . ." (Cal. Code Regs., tit. 18, § 2, subd. (a).)

After its properties were assessed, Walmart paid the property taxes and filed applications for refund with the Board. The applications alleged the assessor incorrectly determined the fair market values of the properties. (§ 1603, subd. (a).) The Board conducted a hearing on the applications, considered oral testimony and documentary evidence, and sustained the assessor's recommended values with written findings.[3] (§ 1611.5.)

Walmart filed a complaint for refund of property taxes. (§ 5140.) The complaint alleged the properties were incorrectly assessed and that the Board's determinations of the property values exceeded the fair market value. After a bench trial in which it considered the administrative record and oral argument, the trial court issued a statement

---

[2] Undesignated statutory references are to the Revenue and Taxation Code.

[3] We will not distinguish between the assessor's opinion of value and the Board's opinion of value because the Board sustained the assessor's opinion. We will therefore refer only to the Board.

2

of decision and judgment in favor of the County. Walmart filed a notice of appeal from the judgment.[4]

B

Section 3 of title 18 of the California Code of Regulations[5] prescribes value approaches and requires the assessor to "consider one or more" of the approaches "as may be appropriate for the property being appraised." (Rule 3.) Generally, the approaches that may be used to value real property are the comparative sales approach (rule 3, subd. (a)), the cost approach (rule 3, subd. (c)), and the income approach (rule 3, subd. (e)).

The comparative sales approach to value relies on "[t]he price or prices at which the property and comparable properties have recently sold." (Rule 3, subd. (a).) This is the preferred approach to value when there is reliable market data. (Rule 4.) The parties both presented evidence to the Board of the sale price of allegedly comparable properties. However, the Board found that "reliable comparable sales were limited for the subject properties and[,] consequently, the comparative sales approach to value was given limited weight by the Board . . . ."

---

[4] The County appears to argue we should decline to reach the merits of this case because Walmart did not obtain a reporter's transcript of the trial court proceedings. (See *Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362 [judgment must be affirmed if appellant failed to present adequate record for review].) We disagree. The trial court decided this case on the administrative record and the arguments of counsel, which were reflected in trial briefing. And the parties provided an agreed statement, which is a proper substitute for a reporter's transcript. (Cal. Rules of Court, rule 8.134.) Accordingly, because we have access to the administrative record, clerk's transcript, and agreed statement, the record is adequate for an appellate determination on the merits.

[5] Undesignated rule references are to sections of title 18 of the California Code of Regulations.

3

The cost approach to value is discussed in rules 3, subdivision (c) and 6. It reflects the estimated land value, plus the new cost of improvements, minus depreciation of the improvements. (Rules 3, subd. (c), 6.) More specifically, the approach relies on "[t]he cost of replacing reproducible property with new property of similar utility, or of reproducing the property at its present site and at present price levels, less the extent to which the value has been reduced by depreciation, including both physical deterioration and obsolescence." (Rule 3, subd. (c).) The parties both presented evidence concerning the cost approach, and the Board found the cost approach was the most reliable indicator of value in this case.

The income approach to value reflects "[t]he amount that investors would be willing to pay for the right to receive the income that the property would be expected to yield, with the risks attendant upon its receipt." (Rule 3, subd. (e).) The assessor presented evidence to the Board concerning the income approach, but Walmart did not. The Board found the income approach was unreliable in this case because of limited income data.

The Board decision related to three properties, but we will discuss only the two properties at issue in this litigation -- a Walmart and a Sam's Club, both on Pleasant Grove Boulevard in Roseville. Both properties were owner-occupied with no leases. The relevant value for the properties was the value on January 1, 2016.

The assessor valued the Walmart at $26,550,000, while Walmart claimed the value was $15,250,000. The assessor valued the Sam's Club at $20,425,000, while Walmart claimed the value was $11,500,000.

The applicant -- here Walmart -- had the burden of proof before the Board. (Rule 321, subd. (a).) The Board was required to determine, by a preponderance of the evidence, whether the assessor's determination was incorrect. (Rule 321, subd. (b).) "No greater relief may be granted than is justified by the evidence produced during the hearing." (Rule 321, subd. (f).)

4

The Board presumed the assessor properly performed her duties and imposed on Walmart the burden of overcoming the presumption that the assessments were correct. (Rule 321, subd. (a).) After considering and weighing each party's independent evidence of value, the Board determined Walmart failed to establish by a preponderance of evidence that the assessment was incorrect.

The Board used the cost approach, adding together the value of the land and the value of the improvements when the improvements were new and then subtracting for depreciation. The Board used the Marshall and Swift depreciation tables to determine depreciation, giving the properties an economic life of 35 years. The Board noted the Marshall and Swift depreciation tables are "a proven statistically reliable depreciation indicator."

In relying on the Marshall and Swift depreciation tables, the Board declined to use Walmart's own study concerning depreciation and obsolescence because it relied on former Sam's Club stores in Sacramento and La Quinta. According to the Board, those properties were not comparable because they were vacant, with significant deed restrictions on the use of the properties, and located in inferior locations economically. The two properties at issue in this case were located in "prime areas of the robust Roseville market."

The Board relied on the cost approach despite the parties' arguments concerning the comparative sales and income approaches. The Board wrote: "Both parties devote substantial argument to the legal issue of how the 'unencumbered fee interest' should be appraised and whether and to what extent comparable sales with existing leases may be used in the appraisal process. While we address that issue in some detail below, we do not find it necessary to resolve the issue to reach our conclusion in this case. Here, we accept the premise that reliable sales and income data are limited for the subject properties. Therefore, under these facts, the most appropriate appraisal method is the cost approach under [rules 3, subdivision (c) and 6]. The cost approach does not rely upon

5

comparable sales and leases to establish value; thus rendering the dispute between the parties discussed [later in the Board decision] to be largely academic. While we accept the comparable sales approach to value provided by the Assessor for purposes of reconciling values, we [have given] limited weight to this approach due to the lack of reliable sales data that can be properly compared to the subject properties."

Based on these and other findings, the Board approved and accepted the assessor's value recommendations.

STANDARD OF REVIEW

Walmart's contentions on appeal do not materially differentiate between the two properties, the Walmart and the Sam's Club. We will likewise conduct our analysis without further differentiating between the properties.

When a taxpayer challenges a valuation *method* used by the assessor, the trial court determines de novo the validity of the method used, as does the reviewing court. However, when a taxpayer challenges the *application* of the valuation method, the trial court reviews the application for substantial evidence, and the reviewing court does too. (*Freeport-McMoran Resource Partners v. County of Lake* (1993) 12 Cal.App.4th 634, 640.)

Walmart asserted in oral argument before this court that our review must be de novo because, by missing the essential third step in the cost approach, the Board did not apply the cost approach at all. Even if such an argument should be construed as a challenge to the valuation method rather than its application, Walmart also urged the following in oral argument: we review the Board's decision and not the trial court's decision; we review whether the Board applied the cost approach correctly; the issue presented is whether the Board applied the legal standard; it is Walmart's position the Board departed from the standard; the essential third step in the cost approach missed by the Board was whether there were property improvements that the market would pay for; and the Marshall and Swift depreciation tables did not account for obsolescence. Those

6

arguments challenge the application of the value method and require substantial evidence review. In any event, we will conclude that under either standard of review, Walmart's challenge to the valuation lacks merit.

DISCUSSION

I

The trial court denied argument based on an alleged violation of rule 6 (pertaining to the cost approach) because Walmart failed to identify "even a conclusory allegation" that the Board's decision wrongfully violated rule 6 in its complaint for refund of taxes. Walmart now challenges that conclusion. We find no error.

As we have explained, the cost approach is referenced in rules 3, subdivision (c) and 6 and considers the value of the land, plus the new cost of improvements, minus depreciation. That calculation was not challenged in Walmart's complaint, and rules 3, subdivision (c) and 6 were not mentioned in the pleading. Walmart's preliminary statement of the sole cause of action in its complaint does not challenge the cost approach to value. Walmart wrote: "Walmart is challenging the property taxes on two of its Placer County stores. The assessments are required by law to be 'fair market value,' which generally means the price that a prudent and informed buyer would pay for the properties. But the assessed values are more than double the prices for which Walmart actually sells its stores. The Assessor wrongly assumed the stores are leased and generating revenue for assessment purposes, and that an institutional buyer . . . would pay a premium price to receive that revenue and would not occupy and use the stores. Walmart and Sam's Club, respectively, occupy the stores. The Assessor is taxing the value of a fictional revenue and not the fee simple unencumbered property. The assessments violate the regulations and standards issued by the California State Board of Equalization."

The preliminary statement focused on Walmart's contention that the Board compared Walmart's properties to other properties that were not comparable and that the assessment was based on fictional leases even though the properties were owner-

7

occupied.  Those are components of the comparative sales and income approaches to value, not the cost approach.  The rest of the complaint asserts error in the same vein -- that the Board compared Walmart's properties to properties that were not comparable.  For example, the complaint alleges:  "The Properties were assessed based on the hypothetical assumption that each was generating rental revenue, i.e. as a leased fee or leased fee equivalent, and that a willing, prudent and well-informed buyer of the Properties would pay a purchase price for such properties reflecting the value of the imputed present and existing gross revenue stream paid by credit tenant.  The Properties were assessed as though actually leased and not as though sold as merely available for occupancy or lease as required by law."  (Italics omitted.)

The complaint alleged that the disparity between the parties' opinions of value was the result of (1) the Board's treatment of the properties as leased fees in violation of rule 2, (2) the Board's imputing of hypothetical revenue streams in violation of rule 8, and (3) the Board's attributing to the properties the value of fictional leases in violation of sections 110, subdivision (d)(3) and 212, subdivision (c), both concerning intangible assets.  Walmart did not allege facts or legal theories directly pertaining to rules 3, subdivision (c) or 6.

In its trial brief, Walmart referenced rule 6 for the first time, arguing that the cost approach must be tested for economic reasonableness by reconciling it with the comparative sales and income approaches, and if the Board had done so, it would have attributed further depreciation (obsolescence) and reduced its opinion of value.

When the County articulated pleading deficiencies during the bench trial, Walmart said it had the ability to move to amend the pleading, but amendment was not necessary unless desired by the trial court because the pleading was sufficient.  Walmart did not move to amend, and the trial court ultimately denied argument based on an alleged

violation of rule 6.[6] In an objection to the trial court's tentative decision, Walmart claimed the pleading was adequate to allege, and put the Board on notice of, a violation of rule 6 because Walmart alleged generally that the Board violated the controlling law and because Walmart attached the Board's decision to the complaint. The trial court overruled the objection.

Walmart repeats on appeal its contention that its complaint was adequate to allege a violation of rule 6 because Walmart attached the Board's decision to the complaint. We disagree. A complaint must contain "[a] statement of facts constituting the cause of action." (Code Civ. Proc., § 425.10, subd. (a)(1).) In other words, the complaint must give the defendant notice of the alleged cause of action. "The essence of the matter is fairness in pleading to give the defendant such notice by the complaint that he may prepare his case." (*Leet v. Union P. R. Co.* (1944) 25 Cal.2d 605, 619.) Merely attaching the Board's decision to a complaint alleging errors concerning rules other than rule 6 was not sufficient to preserve an allegation that the Board violated rule 6. The complaint did not give the Board notice that it would need to prepare a defense to a rule 6 challenge, and it did not allege facts supporting a claim that the Board's decision violated rule 6. When pleading deficiencies were asserted in the trial court, Walmart chose not to amend.

Walmart argues the Board waived any defect in the complaint by not challenging the complaint. But this is not about a defect or uncertainty in the complaint that the

---

[6] The trial court said any amendment to permit a challenge to rule 6 would have been barred by the limitations period in section 5145.5, subdivision (a), which requires that tax refund actions be brought within six months after rejection of the claim. Walmart argues on appeal that amendment of the complaint would not have been barred by section 5145.5, subdivision (a) because any amendment would have related back to the original filing of the complaint. But this argument cannot be made on appeal because Walmart did not move to amend its complaint and thereby preserve whether the relation back doctrine applied.

Board should have challenged; it is about Walmart attempting to assert a claim that was not included in the complaint.

The trial court did not err in denying argument based on a violation of rule 6.

II

Walmart nevertheless contends the Board's valuation was incomplete. Walmart argues that an opinion of value under the cost approach cannot stand on its own without corroboration from an opinion of value under the comparative sales or income approach. But that argument is not supported in the law, even if the practice of assessors is to test the cost approach by comparing the result to the result under one of the other two approaches.

Walmart quotes guidelines for assessing the value of personal property and fixtures, as well as telecommunications properties. However, those guidelines are not applicable to the properties in question and they do not carry the weight of law, as they are neither statutes nor rules. Walmart's only citation to law for this proposition is to rule 6, but that rule recognizes there may not be reliable data to support using the comparative sales and income approaches as cross-checks. Rule 6, subdivision (a) states: "The . . . cost approach to value is used in conjunction with other value approaches and *is preferred when neither reliable sales data (including sales of fractional interests) nor reliable income data are available . . . .*" (Italics added.)

The Board relied on the cost approach because it determined the data for considering the comparative sales and income approaches were not reliable. This approach is consistent with rule 3, which provides that the assessor must consider "one or more" of the value approaches. (Rule 3.) While it may be true that good property assessment practices encourage an assessor to cross-check an opinion of value based on the cost approach by considering the comparative sales and income approaches, the law, as reflected in the rules, does not appear to require it, especially when the data supporting the comparative sales and income approaches is unreliable. Walmart's burden before the

10

Board was to overcome the presumption that the assessor properly assessed the value of the properties. (Rule 321, subd. (a).) Because Walmart did not show that use of the cost approach to value was contrary to law, it failed to carry its burden.

Under the circumstances, we need not consider Walmart's contention that the assessment of the properties reflected a hypothetical leased fee interest because the contention does not relate to the cost approach. As the Board noted in its decision, any dispute concerning the comparative sales and income approaches was largely academic.

DISPOSITION

The judgment is affirmed. The County is awarded its costs on appeal.[7] (Cal. Rules of Court, rule 8.278(a).)


_____/S/_____

MAURO, J.

We concur:


_____/S/_____

HULL, Acting P. J.


_____/S/_____

DUARTE, J.

_____

[7] We previously granted Walmart's request for judicial notice except as to exhibit C attached to the request. We now deny the request for judicial notice of exhibit C, excerpts from a book titled The Appraisal of Real Estate, because it is not apparent that the excerpts are "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." (Evid. Code, § 452, subd. (h).)